Atlantic City Water Works Co. *v.* Consumers Water Co.

---

THE ATLANTIC CITY WATER WORKS COMPANY

*v.*

THE CONSUMERS WATER COMPANY.

44   427
66L 587

44   427
68L 132

44   427
69L 292

1. A complainant is not entitled to a preliminary injunction when the right on which he founds his claim is, as a matter of law, unsettled.

2. A corporation lawfully formed under the statute of 1876, authorizing the formation of corporations to supply water to certain cities, towns and villages,

acquires, on its incorporation, by force of the statute, a right to lay its pipes in the public highways, and the only control which the local authorities may exercise over it, in laying its pipes, is such as may be necessary to prevent it from doing anything which will unnecessarily obstruct or otherwise interfere with public travel.

3. Legislation in respect to the matters enumerated in article 4, paragraph 11, section 7 of the Constitution, affecting certain parts of the State and not others, to be valid, must rest on some characteristic or peculiarity, plainly distinguishing the places included from those excluded, and making the legislation fit and appropriate to those included, while if it embraced those excluded, it would be so inappropriate to their condition as to be useless to them.

4. To make legislation of this kind valid, there must be a substantial distinction, having reference to the subject of the legislation, between the objects or places embraced and the objects or places excluded.

5. Courts may resort to an implication to sustain a statute, but not to destroy it.

6. If an act will admit of two constructions, one of which will render it unconstitutional and the other not, that construction should be adopted which renders the act valid, for it must not be presumed that the legislature intended to violate the Constitution.

7. Two or more corporations may be formed under the statute of 1876 in any of the localities to which it applies, and each acquires, as it is formed, precisely the same right to make use of the public highways in conducting its business.

On application for an injunction, heard on bill and affidavits and answer and affidavits.

*Mr. Samuel H. Grey* and *Mr. Theodore Runyon*, for complainant.

*Mr. William E. Potter* and *Mr. John P. Stockton*, for defendant.

VAN FLEET, V. C.

This is an application for a preliminary injunction. The complainant claims an exclusive franchise in the streets of Atlantic City, and asks to be protected against a threatened violation of such right. The defendant admits that it intends to do the acts which the complainant claims will constitute a violation of its right, but denies that the complainant possesses the exclusive franchise which it claims. Whether the court should grant or

deny the writ asked, must depend entirely on whether the legal right, on which the complainant founds its claim, is, as a matter of law, settled or not. "For," in the language of Chief-Justice Beasley, in *Citizens Coach Co.* v. *Camden Horse R. R. Co., 2 Stew. Eq. 299,* "no rule of equity is better settled than the doctrine, that a complainant is not in a position to ask for a preliminary injunction when the right on which he founds his claim is, as a matter of law, unsettled." That case, in its most essential feature, was the exact counterpart of this, for in that, as in this, the complainant rested its right to the protection it asked, on a claim that it had an exclusive right in the streets of a city, but such claim being then without the support of a single judicial decision in its favor in this State, it was held that a preliminary injunction could not be granted without violating one of the cardinal rules regulating the allowance of such writs.

The parties are rival water companies. They were both formed under the statute of 1876, and for the purpose of supplying water to the same locality. The certificate of incorporation of each states that it was formed for the purpose of supplying the city of Atlantic City, and the inhabitants thereof, with water. The complainant acquired corporate existence in October, 1880, and the defendant in April, 1888. The statute under which both were organized declares, by its first section, that any number of persons, not less than seven, a majority of whom shall reside in this State, may form a company for the purpose of constructing, maintaining and operating water works in any city, town or village in this State having a population of not more than fifteen thousand, nor less than two thousand inhabitants, for the purpose of supplying such city, town or village, and the inhabitants thereof, with water. The second section prescribes how a corporation may be formed. A certificate is to be made, stating the name adopted by the corporation, the amount of its capital, and certain other facts, and this certificate, "together with the consent, in writing, of the corporate authorities, if any, of the town or city proposed to be supplied with water," must be filed in the office of the secretary of state. The third section declares, that when such certificate and consent shall have been filed, the

persons who shall have signed and acknowledged the certificate, and their successors, shall be a body politic and corporate. Corporations formed under this statute are given power to take land, by the exercise of the right of eminent domain, and also the right to use the public highways for the purpose of laying their pipes therein. *Rev. p. 1365.* The complainant and the defendant were both formed in strict accordance with the requirements of this statute. The common council of Atlantic City consented, by ordinance, to the formation of each. Unless, therefore, it be true, as the complainant contends, that this statute was intended to be private and special in its operation, and to authorize the formation of but a single corporation in any one of the cities, towns and villages to which it applies, it would seem to be beyond question, that both exist by authority of law. Each having been created by the same power, and each having derived its rights from the same source, they must, if they both exist by force of law, each stand as the peer of the other, both in legal right and power.

The complainant completed its works in June, 1882, since which time, the defendant admits, the complainant has furnished to Atlantic City and its inhabitants a continuous and sufficient supply of water for all purposes. The complainant has expended, in the erection of its works, about $400,000. The defendant, when the bill in this case was filed, was not engaged in supplying water, but was making preparation to do so, by putting down pipes, some of which were laid in the same streets where the complainant had laid its pipes. The defendant, at the time it filed its answer, had expended, in the purchase of an artesian well and making preparation to distribute water, about $60,000. The complainant's certificate of incorporation, together with the consent of the proper authority of Atlantic City, was filed in the office of the secretary of state on the 25th of October, 1880. The next day the city entered into a contract with the complainant, whereby the city covenanted that it would not grant to any other person or corporation the right to lay water pipes beneath any of the ways of the city for the purpose of supplying water to Atlantic City or the inhabitants thereof.

The means by which the complainant acquired the exclusive franchise which it asks to have protected, are set forth in its bill as follows :

"And your orator further shows and charges that your orator has, by express legislative sanction, under the act of the legislature, approved April 21st, 1876, and the supplements thereto, and by virtue of the consent of the corporate authorities of Atlantic City to the formation of your orator, as a corporation, for the purpose of supplying water to said city and the inhabitants thereof, and by your orator's acceptance of such consent, and creation of your orator's corporation predicated thereon, and by your orator's establishment of a plant, for the purpose of supplying water under said acts of the legislature and said ordinance, and by the supply of water furnished by your orator, pursuant to and in reliance upon said legislative and municipal action, acquired, and is invested with, an exclusive franchise to supply water to Atlantic City, and the inhabitants thereof, and an exclusive right to the streets of said city for its water mains and conduits for the transmission and distribution of water for the purposes aforesaid."

This statement, it will be noticed, does not mention, as one of the sources of the complainant's right, the city's covenant not to grant to any other person a right to make a like use of the streets with that which the complainant had acquired. This omission is undoubtedly due to the fact, that prior to the filing of the bill in this case, the agreement containing that covenant, together with the ordinances authorizing its execution, had been declared, by the supreme court, to be void, on the ground that the agreement created a debt against the city in excess of the amount limited by law. *Read* v. *Atlantic City, 20 Vr. 558.* The complainant was a party defendant to that proceeding, and is consequently concluded by the judgment pronounced in it. Since the argument of the application now under consideration, the judgment of the supreme court has been affirmed by the court of errors and appeals. *Atlantic City Water Works Co.* v. *Read, 21 Vr. 665.*

The covenant is now a nullity, and must, for that reason, be laid out of view in the further consideration of the case. But were it still in force, or rather was the question as to its validity still undetermined, it would not help the complainant, for it is entirely clear, as I think, that unless the statute of 1876 is pri-

vate and special, authorizing the formation of but a single cor-
poration in any one of the places to which it applies, it is not
within the power of the governing body of any municipality,
embraced by the statute, to prevent or defeat the formation of a
second corporation, by attempting to grant an exclusive right in
the streets to the first, or by covenanting with the first that no·
like right shall be subsequently granted. A corporation formed
under this act does not derive its right to lay its pipes in the·
public ways from the municipality where it is located, but that.
right is given by the statute itself. The twelfth section declares,.
that any corporation formed under this statute, shall be author-
ized and empowered to lay its pipes in the public highways, free
from all charge to be made by any person, "provided that the
consent shall be obtained of the corporate authorities, if any there
be, of any town through which the same may be laid." *Rev. p..
1367.* If this proviso was intended to apply to cities as well as
towns, though it will be observed that it mentions towns only, it
is quite obvious, that to give full effect to all parts of the section,
it must be so read as to limit the purpose which the legislature
had in view, in requiring the water company to obtain the con-
sent of the local authorities, to merely compel the water company
to submit to such local regulation in the use of the streets, while·
putting down its pipes, as should be necessary to prevent all im-
proper or unnecessary interference with public travel, and to·
render the water company's occupation of the streets as little in-
convenient to the public as possible. I think it is entirely cer-
tain, that it was not the intention of the legislature to invest the
governing body of any municipality, where a corporation under·
this act should be formed, with power to decide, after such cor-·
poration had been lawfully created, whether or not it should be
permitted to exercise its corporate functions. The only franchise·
which such a corporation can possess is a right to lay its pipes in
the public ways. A right to make such use of the public ways.
is special and exceptional, and not common to all the citizens of
the state, and can only exist by force of a grant from the sovereign
power. The right, however, to sell water is not a prerogative of
government, but is a business in which any person may engage

without legislative authority, so that I think it is entirely plain, that a corporation, formed under this statute, acquires, by force of the statute itself, the moment it becomes a body politic and corporate, a franchise investing it with power to lay its pipes in the public ways, and that the only control which the municipal authorities can exercise over such a corporation, in the use of its franchise, is to prevent the corporation from using its franchise in such manner as will unnecessarily obstruct or otherwise interfere with public travel.

The complainant's right to an exclusive franchise rests upon a single ground, and that is, that the statute in question authorizes the formation of but a single corporation in any one of the cities, towns or villages coming within the operation of its provisions, and the corporation first organized, therefore, necessarily takes an exclusive franchise. This is the ground, in substance, upon which the bill places the complainant's right. This interpretation of the statute has the support of judicial authority. This court, in describing the nature of the right which this very complainant acquired by its incorporation, in *Atlantic City Water Works Co.* v. *Atlantic City, 12 Stew. Eq. 367, 376,* said : "The legislature necessarily contemplated the expenditure by the company of its funds for the purpose for which it was created, and it cannot be supposed that it intended that the company should have no security against competition which might deprive it of all advantage of its large outlay. The franchise granted by the legislature to the company is, by necessary implication, exclusive. The purpose for which it was granted shows that it must have been intended to be so. It was bestowed for a single object—the supplying of Atlantic City with water. The requirement that the city consent to the creation of the corporation, gives strength to the inference." In another part of the opinion, it is held, that the power which the city may exercise in procuring a supply of water, is limited, and that the city having, prior to the defendant's organization, made an arrangement with the complainant, whereby a full supply was obtained, the power of the city is exhausted, and must remain so, so long as the complainant continues to furnish a full supply.

28

The opinion on this point says: "As matters now stand, the city has provided for and obtained a supply, and it has, therefore, now no power to make any further provision on that head, for there is no room for any; the city is already supplied." This construction of the statute would be adopted at once, and without doubt respecting its soundness, were it not manifest, as I think, that that course would inevitably result in the rejection of the complainant's application, not alone on the ground that the complainant does not possess the exclusive right which it claims, or that its title to such right is doubtful, but because the law, in virtue of which it claims corporate existence, stands in plain violation of the Constitution.

By an amendment made to the Constitution in 1875, it is declared : " The legislature shall not pass private, local or special laws   *   *   *   granting to any corporation, association or individual any exclusive privilege, immunity or franchise whatever. *   *   *   The legislature shall pass no special act conferring corporate powers, but they shall pass general laws, under which corporations may be organized, and corporate powers of every nature obtained." *Art. IV ¶ 11 § 7.* The construction given to the statute of 1876, in the case just cited, was, beyond all doubt, adopted without this provision of the Constitution being before the mind of the court, and consequently no consideration whatever was given to it. The fact that no allusion is made to it, in the opinion of the court, furnishes conclusive evidence that this must have been so. The case was undoubtedly argued without the slightest allusion being made to the Constitution, the argument being confined to the discussion simply of such matters as involved a construction of the statute, judged by itself alone. The opinion makes it manifest that this must have been the case.

The chief-justice, in *Van Riper* v. *Parsons, 11 Vr. 1,* defined the object of this provision of the Constitution to be, to exterminate, root and branch, special and local legislation, and to substitute general law in the place of it, in every instance in which such substitution could be effected. This definition was adopted by the court of errors and appeals, in *Tiger* v. *Morris Common Pleas, 13 Vr. 631.* The statute in question is plainly local and

special in its operation. It is the law in cities, towns and villages having a population of not more than fifteen thousand and not less than two thousand, and nowhere else. The question, whether it has effect or not in any particular place, is determined by the number of its inhabitants, and by nothing else. Legislation in respect to the matters enumerated in this paragraph of the Constitution, affecting particular subdivisions, or parts of the State, and not others, may be valid, but to be valid it must, as I understand the adjudications, rest on some characteristic or peculiarity, plainly distinguishing the places included from those excluded, and making the legislation fit and appropriate to those included; while if it embraced those excluded, it would be so inappropriate to their condition as to be of no advantage or benefit to them. But legislation of this kind, which is controlled in its operation as to locality, by a mere arbitrary distinction, having no affinity to or connection with the subject matter of the legislation, falls within the constitutional interdiction, and is invalid.

To illustrate: A statute which should give to all cities in this State, situate on tide-water, the privilege of using such waters in connection with their sewers (*Richards* v. *Hammer*, *13 Vr. 435*); or, a statute which should give all cities in this State, bordering upon tide-water, power to construct docks, or establish quarantine regulations, or providing that in all towns having volunteer fire departments the members should have power to choose a commission to govern them (*Anderson* v. *Trenton*, *13 Vr. 486*), would be a valid exercise of legislative power; while, on the other hand, a statute which should declare that all cities containing a certain number of inhabitants should have one system for laying out streets, and that those having a smaller population should have another (*Van Riper* v. *Parsons*, *11 Vr. 1*); or, a statute which should declare that in every city in which there are ten churches, there should be three commissioners of the water department, with certain prescribed duties (*Richards* v. *Hammer*, *13 Vr. 435*); or, a statute which should confer upon cities having a population of not less than twenty-five thousand, power to issue bonds to fund their floating debt (*Anderson* v. *Trenton*, *13 Vr. 486*), would be invalid, for the reason that such statutes would

all be controlled, as to localities in which they should have effect,. by a quality or characteristic which is purely arbitrary, and which has no connection whatever with their subject matter.    The chief-justice, in *Richards* v. *Hammer, 13 Vr. 435, 440,* says, that to render legislation of this kind valid, something more is required " than a mere designation by such characteristics as will serve to classify, for the characteristics which thus serve as the basis· of classification must be of such a nature as to mark the objects so designated as peculiarly requiring exclusive legislation. There must be a substantial distinction, having a reference to the subject matter of the proposed legislation, between the objects or places embraced in such legislation and the objects or places excluded.    The marks of distinction on which the classification is founded must be such, in the nature of things, as will, in some reasonable degree, at least, account for or justify the restriction of the legislation."

Tested by the rules above stated, there can be no doubt, I think, that the statute in question is both local and special.    If, therefore, it be true, as was held in *Atlantic City Water Works Co.* v. *Atlantic City, 12 Stew. Eq. 367,* that this statute invests the first corporation organized under it, in any city to which it applies, with an exclusive franchise, it would seem to be so clear as to be beyond all dispute, that it violates both the letter and the spirit of this constitutional prohibition.    The object of the prohibition is entirely free from doubt.    The purpose was to deprive the legislature of the power of creating monopolies, by requiring them to pass general laws, making the acquisition of such franchises as private corporations usually exercise, open to all, and thus creating, for the benefit of the public, a healthy competition among those who seek, by the use of franchises, to make gain and profit for themselves.    This purpose is expressed in language so apt and· lucid that any attempt to demonstrate it, except by simply quoting the pertinent words, is more likely to obscure than to elucidate.    The pertinent words are :  The legislature shall pass no local or special law granting to any corporation any exclusive franchise whatever.    The legislature shall pass no special act conferring corporate powers, but they shall pass general laws under which cor-

porations may be organized, and corporate powers of every nature obtained. There are no words in the statute under consideration which, in express terms, grant an exclusive franchise or right of any kind. The complainant's claim in that regard rests entirely on an implication, which, if made, will destroy both the complainant and the right which it claims. The courts may resort to an implication to sustain a statute, but not to destroy it. It is a principle of construction, that if an act admits of two constructions, one of which will render it unconstitutional and the other not, that construction must be adopted which will render the act valid, for it must not be presumed that the legislature intended to violate the Constitution. *Colwell* v. *Mays Landing Water Power Co., 4 C. E. Gr. 245.* The court, in my judgment, is bound to declare that this statute is general, to this extent, at least, that two or more corporations may be lawfully formed under it in any of the localities to which it applies, and that each acquires, as it is formed, precisely the same right to make use of the public highways in conducting its business.

It is clear, then, that the complainant has not, as against the defendant, the exclusive right which it claims. But I think it should also be said that, under the most favorable view which can be taken of the complainant's case, the right which it claims is subject to very serious doubt. That is sufficient to defeat the present application. Whatever rights the complainant has were derived from the statute of 1876. If that statute is unconstitutional, it has no rights whatever. It does not exist by force of law. The question whether that statute is valid or not, is an unsettled legal problem. It was raised in *Davis* v. *Harrison, 17 Vr. 79;* but the court refused to decide it, because the case could be effectually disposed of by the decision of another question. It was also before the court in *Read* v. *Atlantic City, 20 Vr. 558;* but, as it had not been argued, and as its decision involved matters of high importance to the corporations which had been organized under the statute, as also to the municipalities which had acted under it, and as that case could be properly decided without passing upon this question, the court declined to express any opinion on it. The question, though twice before

the supreme court, is still undecided.   It is, therefore, a disputed and unsettled question of law.   While it remains so, the complainant will be in no position to ask for a preliminary injunction against the defendant.

The complainant's application must be denied, with costs.