THE ELIZABETHTOWN GAS LIGHT COMPANY

v.

JAMES S. GREEN and others.

1. Nobody can take advantage of the breach of the condition on which a corporation is created, for the purpose of depriving it of its franchises, except the sovereign power which created the corporation.

2. A court of equity has no authority, in virtue of its general jurisdiction, to dissolve a corporation and deprive it of its franchises for either non-user or misuser of its corporate powers, nor because its organization was not effected in accordance with the requirements of the law by which it was created, but in violation of them.

3. An inquiry whether a corporation exists *de jure* or not is beyond the power of a court of chancery.

4. Whenever it is sought to impugn the legality of a corporation which exists under the forms of law, the remedy is by *quo warranto*, or information in the nature thereof, instituted by the attorney-general.

5. But a court of equity has power to protect a corporation, holding an exclusive franchise, from irreparable injury arising from the usurpation of a like franchise.

6. Where a statute, creating a corporation, declares, that unless the corporation performs certain acts within a specified time after its organization, its corporate existence and powers shall cease, or its powers and franchises shall terminate, it has been held, that the statute executes itself, and that if the designated acts are not done within the time limited, the corporation ceases *ipso facto* to exist, and the fact that it has, by its laches, lost corporate life and power may be alleged and proved in a collateral proceeding.

7. *Jersey City Gas Co.* v. *Dwight, 2 Stew. Eq. 242*, reversed by *National Docks R. R. Co.* v. *Central R. R. Co., 5 Stew. Eq. 755.*

On final hearing on bill, answer and proofs taken in open court.

*Mr. R. V. Lindabury, Mr. Frederic W. Stevens* and *Mr. Theodore Runyon,* for the complainant.

*Mr. James R. English* and *Mr. Joseph Cross,* for the defendants.

VAN FLEET, V. C.

The complainant, by a special statute passed in 1855 (*P. L. of 1855 p. 105*), was created a body corporate for the purpose of making and selling gas in the city of Elizabeth. Its charter gave it authority to use the public grounds of the city of Elizabeth for the purpose of laying its pipes therein, and doing such other things therein as might be necessary to enable it to accomplish the purposes of its creation. It has established works, including the laying of about forty-seven miles of pipe, at a cost

of about a half million of dollars, and has been in active operation, as a gas company, for over twenty years. The defendants are ten natural persons. They have commenced exercising the same franchises in the public grounds of Elizabeth that the complainant has exercised. They admit that they intend to compete with the complainant in the business of making and selling gas, and that, in carrying on such business, they intend to make the same use of the public grounds of Elizabeth that the complainant does. They do not, however, claim that they have a right as natural persons or as individuals to the franchises they are exercising, but they say the franchises belong to the Metropolitan Gas Light Company of Elizabeth—which, for brevity, will hereafter be called the Metropolitan company—and that they are the officers of that corporation, and that as such, and in that capacity, they have a right to exercise the franchises in question. The defendants assert no right whatever as individuals, but base their right to do, what they admit they are doing, solely on power conferred upon the corporation which they claim to represent as its officers. The complainant, while admitting that the legislature, by a special statute passed in 1870, authorized the formation of a corporation to be known by the name of the Metropolitan company, and granted to it, after an organization of it should be effected in accordance with terms of its charter, a right to make such use of the public grounds of Elizabeth as the defendants are now making; and while also admitting that a certificate had been filed in the office of the secretary of state, about a month before its bill in this case was filed, certifying that the defendants had been elected directors and other officers of that corporation, still insists, that the defendants have no right, in any capacity, to the franchises they are exercising, and that their claim to them is false, fraudulent and without warrant of law. The matter of fact stated in the bill, as the foundation of the complainant's insistment, is this: that the persons to whom authority to form a corporation was given, by the charter of the Metropolitan company, never organized a corporation in accordance with its provisions, and it is claimed, as a consequence of such failure, that no franchise or other attribute of sovereignty

ever passed by the charter to anybody. It is said, that no stock was ever subscribed or paid for, and that that being so, it necessarily follows, that there never were any stockholders, and consequently there never were any persons in existence qualified either to be directors or to elect directors. The complainant asks that the defendants may be enjoined from using the public grounds of Elizabeth for the purpose of laying down gas-pipes and distributing gas. The ground on which it asks this relief is, that it has a right to use the public grounds of Elizabeth, in conducting its business, which right is exclusive against everybody but the State; that the defendants have no such right, and that their attempt to exercise a like right is a plain usurpation of power. An attempt to usurp power constitutes the foundation of the complainant's claim to relief. It has no other. The complainant is neither a creditor, nor stockholder of the Metropolitan company. No contract or covenant relations, of any kind, exist between the two corporations. Unless, therefore, the complainant has made it entirely clear that its right to use the public grounds of Elizabeth is exclusive, as against the Metropolitan company, so that it is true, as a matter of law, that the acts of the defendants are mere usurpations of power, no relief can be given to the complainant.

Three principles of law, bearing directly on the question presented for decision, are, in my judgment, so firmly settled as not to be open to debate: *First.* It is authoritatively settled, that nobody can take advantage of the breach of the condition, on which a corporation is created, for the purpose of depriving the corporation of its franchises, except the sovereignty which created the corporation. *Commonwealth* v. *Union Ins. Co., 5 Mass. 230,* furnishes an instructive example of the manner in which the courts apply and enforce this principle. In that case a number of persons who were members of the defendant corporation, obtained a rule requiring the corporation to show cause why an information in the nature of a *quo warranto* should not be filed against it, for the purpose of dissolving it and procuring an adjudication that its corporate powers were void. The statute under which the corporation had been formed " required the

holders of its stock to pay fifty per centum of their subscriptions within sixty days after the first meeting of the company ; and that no insurance, on any one risk, should be made for a larger sum than ten per centum of the capital stock, actually paid in." The prosecutors of the rule alleged that the defendant corporation had violated both provisions of the statute. Chief-Justice Parsons, in pronouncing the judgment of the court, said : " We have not inquired into the truth of these allegations, as we are satisfied that, in this case, such inquiry would be immaterial, because this rule is not moved for in behalf of the commonwealth or by its authority. * * * An information for the purpose of dissolving the corporation, or of seizing its franchises, cannot be prosecuted but by the authority of the commonwealth, * * * for the commonwealth may waive any breaches of any condition, expressed or implied, on which the corporation was created ; and we cannot give judgment for the seizure by the commonwealth of the franchises of any corporation, unless the commonwealth be a party in interest to the suit, and thus assenting to the judgment." The same principle was stated in a form somewhat more sententious by Mr. Justice Nelson, in delivering the opinion of the supreme court of the United States in *Frost* v. *Frostburg Coal Co., 24 How. 278, 283.* He said : "A private party cannot take advantage of a forfeiture. That is a question for the sovereign power, which may waive it or enforce it, at its pleasure." The supreme court of this State, in deciding the case of the *State* v. *Paterson and Hamburg Turnpike Co., 1 Zab. 9,* placed its judgment squarely on the principle laid down by the supreme court of Massachusetts in *Commonwealth* v. *Union Ins. Co.,* and Mr. Justice Dixon, in delivering the judgment of the court of errors and appeals, in the case of the *National Docks R. R. Co.* v. *Central R. R. Co., 5 Stew. Eq. 755, 760,* cited the case of the *State* v. *Paterson and Hamburg Turnpike Co.,* as containing an accurate exposition of the law on this subject.

*Second.* It is also well settled, that a court of equity has no authority, in virtue of its general jurisdiction, to dissolve a corporation and deprive it of its franchises for non-user or misuser of its corporate powers, nor because it was not organized in strict

accordance with the requirements of the statute by which it was created, but in violation of them. The power to so adjudge belongs exclusively to another tribunal, and a court of chancery can in no case, unless specially authorized by statute, try the validity of a corporate organization existing under the forms of law. *Attorney-General* v. *Stevens, Sax. 369 ;* *National Docks R. R. Co.* v. *Central R. R. Co., 5 Stew. Eq. 755.* In .the case last cited, Mr. Justice Dixon said (*p. 760*), that an inquiry whether a corporation exists *de jure* or not is beyond the powers of a court of chancery, and that whenever it is sought to impugn the legality of a corporation, which exists under the forms of law, the remedy is by *quo warranto,* or information in the nature thereof, instituted by the attorney-general. And Mr. Justice Depue, in delivering the opinion of the court of errors and appeals in *Hackensack Water Co.* v. *DeKay, 9 Stew. Eq. 548, 559,* said : " The general rule of law is, that the regularity and validity of the organization of a corporation, effected under color of its charter, cannot be impeached in any collateral proceeding, and that the acts of its officers, who are officers *de facto,* under color of an election, are valid and binding upon the corporation. This doctrine has been applied to proceedings to enjoin a corporation from exercising its franchises."

*Third.* It is also established that a court of equity has power to protect a corporation, holding an exclusive franchise, from irreparable injury, arising from the usurpation of a like franchise, whether the usurpation be committed by natural or artificial persons. The leading cases on this subject in this State are the *Delaware and Raritan Canal and Camden and Amboy Railroad and Transportation Companies* v. *Camden and Atlantic R. R. Co. and Raritan and Delaware Bay R. R. Co., 1 C. E. Gr. 321 ; S. C. on appeal, 3 C. E. Gr. 546 ; Pennsylvania R. R. Co.* v. *National Railway Co., 8 C. E. Gr. 441.* In the first case, it will be remembered, two railroad corporations, having authority by special charters to construct two distinct railroads between two different termini within the State, attempted, by a deviation from the route prescribed by the charter of one of them, to construct connecting roads, and thus establish a continuous through line from New

York to Philadelphia. At the time this attempt was made, a contract existed between the State and the complainant corporations, by which the State had agreed that no railroad or railroads should, without the consent of the complainants, be constructed in this State, before the 1st day of January, 1869, for the transportation of passengers and merchandise between the cities of New York and Philadelphia, so as to become a competitor in the through business from one city to the other with the complainants. The complainants asked to be protected against the injury which would result to them if the defendants were allowed to carry out their purpose. Chancellor Green restrained the defendants from operating their roads as a through line. He put the complainants' right to relief on the monopoly clauses of their charters. On appeal, the court of errors and appeals held that the complainants were entitled to more relief than had been given to them in the court below, and also that their right to relief stood on a broader foundation than that on which the chancellor had placed it. The latter court held that every grant of a franchise is, in its very nature, exclusive against everybody but the State, and that an attempt by a person to exercise a like franchise, without legislative authority, to the detriment of the grantee, is a public nuisance. Chief-Justice Beasley, in delivering the opinion of the court, expressed the judgment of the court on this point in this language: "When, therefore, the complainants obtained from the State the right to establish their road, I think that, by the intrinsic force of such grant, such franchise was exclusive against all persons but the State. A competing road, set up without legislative license, is a fraud upon such grant, and is a plain public nuisance. The consequence is, that the case of the complainants, in my opinion, does not, necessarily, rest upon the express clause in their charter guaranteeing to them an exclusive privilege. After the 1st of January, 1869, when the effect of this clause will be spent, the defendants, as at present constituted, will have no greater right than they now have to establish a line of railroad to compete in business with the complainants between the cities of New York and Philadelphia." *3 C. E. Gr. 572.*

In view of these principles, it is clear that this court cannot give the relief asked, unless it has been demonstrated that the acts of the defendants, which the complainant seeks to have enjoined, are plain usurpations of power. That they are not, is certain beyond all dispute, if it be true, as the defendants claim, that they are acting under the grant made by the legislature to the Metropolitan company. By a special statute passed in 1870 (*P. L. of 1870 p. 247*), James S. Green, one of the defendants in this suit, and eight other persons, who are designated by name, and such other persons as might become subscribers to the stock of the corporation, in the mode prescribed by the statute, and their successors, were created a body politic and corporate in fact by the name of the Metropolitan Gas Light Company of Elizabeth. The corporation was given power to make and sell gas, for the purpose of lighting the city of Elizabeth, and to enable it to accomplish the purpose for which it was created, it was " empowered to lay down gas-pipes and to erect gas-posts, burners and reflectors in the streets, alleys, lanes, avenues and public grounds of the city of Elizabeth and vicinity, and to do all things necessary to light the city of Elizabeth and vicinity, and the dwellings, stores and other places situated therein, with gas." Four of the incorporators were, by the statute, appointed commissioners to receive subscriptions to the capital stock of the corporation, which was fixed at $100,000, divided into 2,000 shares of $50 each. The commissioners were directed to give public notice, by advertisement in a newspaper published in Elizabeth, of the time and place when and where subscriptions would be received, and then at the time and place so appointed open books and receive subscriptions. The statute also directed that the sum of five per centum, upon each share subscribed, should be paid to the commissioners by each subscriber at the time of his subscription, in the legal tender of the United States, and that the money so received by the commissioners should, on the appointment of directors, be paid over to them ; and that as soon as conveniently might be after $30,000 should have been subscribed and paid in, the commissioners should convene the stockholders to choose a first board of directors, who were to

hold office until the first Monday in May, 1871. By a supplement passed in 1873 (*P. L. of 1873 p. 985*), authority was given to the stockholders to elect the first board of directors at any time prior to the 1st day of September, 1873, and the directors were authorized to increase the capital of the corporation to $350,000.

The proofs show that three of the persons appointed commissioners received subscriptions, in July, 1870, for the whole of the stock which the charter, as it stood when it was passed, authorized to be issued, and that they awarded to each subscriber the whole number of shares for which he subscribed. The subscribers were three in number. James S. Green subscribed for one thousand shares, and that number was awarded to him. None of the stock was paid for at the time the subscriptions were made, nor, so far as appears, has it been paid for since. A board of directors was elected in April, 1873. It organized shortly thereafter by the election of a president and secretary. Committees were also appointed—one to draft by-laws, another to procure plans and specifications for a building—and a resolution was adopted that the board should act as committee of the whole in selecting and purchasing land for the works of the corporation. The board held several meetings prior to the 1st of August, 1873, at which some of the things necessary to be done to put the corporation into operation, as a going concern, were discussed. About the 1st of August, 1873, this board seems to have disbanded, and nothing further was done until March, 1885, when a new board was elected. The board elected in March, 1885, resolved to increase the capital to $350,000, but held no meeting after March, 1885, so far as the minutes show, until January, 1888. A meeting was then held at which vacancies in the board were filled, and a president, secretary and treasurer elected. Nothing further was done until May 7th, 1889, when a stockholders' meeting was held at which the defendants to this suit were elected directors. Since then lands have been conveyed to the Metropolitan company, worth, according to the consideration stated in the deed by which they were conveyed, $35,000, and the defendants have been at work doing the things necessary to

put the corporation into active operation as a gas company. The evidence establishes three facts beyond dispute. *First,* that the Metropolitan company made no active use of the franchises granted to it in 1870 until 1889, but continuously refrained, during the whole of the intervening period, from putting them into active exercise ; *second,* that nothing was ever paid for or on account of the stock subscribed in 1870 ; and, *third,* that the Metropolitan company was without either business or property, except its franchises, from 1870 until 1889.

But I am unable to discover anything in these facts which entitles the complainant to the relief it asks, or which would justify an adjudication that what the defendants are doing amounts to an usurpation of powers belonging exclusively to the complainant. After 1870 the complainant had no exclusive right, as against the Metropolitan company, in the public grounds of Elizabeth, for in that year the State granted to the Metropolitan company a right to make the same use of such grounds, in conducting its business, that it had previously granted to the complainant, and after such grant was made the Metropolitan company stood the equal of the complainant in point of privilege. No time is limited in the charter of the Metropolitan company within which it shall commence furnishing gas to the citizens of Elizabeth, nor is it required to commence exercising its franchises within a certain limited time, or cease to exist as a corporation, or lose its franchises. Where a statute, creating a corporation, declares that unless the corporation performs certain acts within a specified time after its organization, its corporate existence and powers shall cease, or its powers and franchises shall terminate, it has been held that the statute executes itself, and that if the designated acts are not done within the time limited, the corporation ceases *ipso facto* to exist, and the fact that it has, by its laches, lost corporate life and power may be alleged and proved in a collateral proceeding. *Matter of Brooklyn, Winfield and Newton Railway Co., 72 N. Y. 245,* and *Brooklyn Steam Transit Co., 78 N. Y. 524,* are cases in which it was so held. But the statute creating the Metropolitan company imposed no such terms. The franchises it conferred were granted

unconditionally, and are, by the express terms of the grant, to continue in force for fifty years, and by general statute then in force the Metropolitan company became, on its creation, endowed with power to have succession for the period for which its corporate life was to endure. *Rev. Stat. 1846 p. 136 § 1 ; Rev. p. 174 § 1.* There can be no doubt that the legislature might have repealed its charter for its neglect, for so long a time, to put its franchises into exercise, but I think it may be doubted whether any court would, even in a proceeding instituted by the State, on its own behalf, deprive a corporation of its franchises simply on the ground of non-user, where, as in this case, nothing can be found in its charter indicating, either by express words or implication, that a non-user of its franchises should operate as a surrender or work a forfeiture of them. In a standard treatise on the Law of Corporations (*Ang. & A. Corp. § 773*), it is said :

"Mere non-user of its franchises by a corporation is not a surrender; nor are courts warranted in inferring a surrender from an abandonment of the franchises in intention only, unless there be something in the act of incorporation to justify it."

But it is wholly immaterial in this case whether the non-action or non-user of the Metropolitan company has been such as to furnish evidence of a surrender of its franchises, or to place it in a position where the State has a right to demand a judgment of forfeiture against it, for nothing is better settled than that the complainant is without the least pretense of competency to start such an inquiry, and that this court is without the least shred of jurisdiction over it.

But the ground on which the complainant principally relies is, that the Metropolitan company never acquired a right to place gas-pipes in the public grounds of Elizabeth. This is, in fact, its fundamental proposition, and the line of argument by which it was attempted to be maintained was this : that the payment of $30,000 by the stockholders, either to the commissioners or into the treasury of the corporation, was a condition precedent to organization, and that until this condition was performed it was impossible for the corporation to acquire either corporate life or

power; in other words, that the legislative grant was only to take effect after the stockholders had paid $30,000, and as the truth is that that sum has never been paid, the grant never acquired vitality, and that, as a consequence, the Metropolitan company stands now precisely in the same condition as it would if no attempt had been made to make a grant to it. It is not necessary, in my judgment, to decide whether this argument construes the grant made to the Metropolitan company correctly or not, for if it be conceded that it does, still it is certain, beyond all dispute, that until it is made clearly to appear that the condition in question was imposed in favor of the complainant or for its benefit, so that it has a clear right to demand its observance, the complainant's position, with respect to the condition, is that simply of a stranger, and hence it stands without the least pretence of right to complain of its breach. It is only the parties to a grant made subject to conditions, or those in whose behalf or for whose benefit the conditions are imposed, that have a right to ask that they shall be performed, or to seek protection against their breach, or redress for their violation. The complainant is not mentioned in the charter of the Metropolitan company. The charter contains no word or sentence which, by the most lax construction, would support even a conjecture that the condition under consideration was imposed for the benefit or protection of the complainant. A contrary purpose is manifest. The charter granted to the Metropolitan company shows that the legislature thought the welfare of the people of the city of Elizabeth would be promoted by the creation of another corporation, possessing the same powers and privileges held by the complainant, to compete in business with the complainant. The purpose of the condition is obvious; it was imposed to protect such persons as should become creditors of the Metropolitan company. That was its only purpose. The power, however, to require its performance, or to overlook or waive its breach, resides alone in the State. No one but the State can take advantage of the breach of such a condition, or compel a corporation subject to such a condition to either perform it or surrender its franchises. This, as I understand, is the principle on which the decision of

9

the court of errors and appeals, in *National Docks R. R. Co.* v. *Central R. R. Co., 5 Stew. Eq. 755,* rests. I failed to recognize and apply this principle in deciding *Jersey City Gas Co.* v. *Dwight, 2 Stew. Eq. 242.* That case does not appear to have been cited or considered by the court of errors and appeals in disposing of the case of the *National Docks R. R. Co.* v. *Central R. R. Co.,* but as it is irreconcilable in principle with the latter case, I must assume that, if it had been considered, it would have been disapproved by the court of last resort. The case under consideration differs in some important particulars from that of *Jersey City Gas Co.* v. *Dwight.* I can see how it would be possible to distinguish that case from this, so that relief might be given in that but refused in this, but I do not think there is any essential particular in which it can be said that there is a substantial distinction between the case of the *National Docks R. R. Co.* v. *Central R. R. Co.* and that of the *Jersey City Gas Co.* v. *Dwight.* In my judgment, it is entirely clear that the latter case is, in effect, reversed by the former.

Plainly stated, the ground upon which the complainant is seeking relief is not that no franchises, as against it, have been granted by the statute to the Metropolitan company, but rather that grounds exist which would be sufficient, if the State were the suitor and the suit was pending before another tribunal, to deprive the Metropolitan company of both corporate life and power. The case is one where, in my judgment, relief must be refused both on the ground that the court is without power and the complainant without a case. The bill will be dismissed, with costs.