PUBLIC SERVICE RAILWAY COMPANY

*v.*

WILLIAM D. REINHARDT.

[Submitted January 5th, 1921.   Decided February 9th, 1921.]

The act regulating the operation of auto buses on city streets (*P. L.
1916 p. 283*) is for the protection of the public, and for revenue pur-
poses, and is not for the benefit of street railway companies, and a com-
pany operating a street railway under *4 Comp. Stat. p. 5021*, has no
standing to enjoin the use of the streets by jitneys on the ground that
the city's consent under that act is invalid.

On bill, &c.

*Mr. Frank Bergen, Mr. L. D. Howard Gilmour, Mr. E. Am-
bler Armstrong* and *Mr. Robert H. McCarter,* for the com-
plainant.

*Mr. Merritt Lane,* for the defendant.

*Mr. Jerome D. Congleton,* for the city of Newark.

GRIFFIN, V. C.

The complainant, a street railway company, incorporated
under the act entitled "An act to authorize the formation of
traction companies for the construction and operation of street
railways or railroads operated as street railways, and to regulate
the same," approved March 14th, 1893 (*P. L. 1893 p. 302; 4
Comp. Stat. p. 5021*), lawfully laid its tracks and appurtenances
in streets in the city of Newark, and is operating its cars on and
over the same, carrying passengers for hire, and has expended
sums of money running into millions in the construction and
equipment of its road in order to enable it to carry on its busi-
ness as a common carrier; and likewise expends large sums of
money annually as necessary maintenance and operation charges.

By the bill the defendant is charged with being engaged in competition, as a carrier of passengers for hire, in streets where complainant's tracks are laid, running his auto buses, called "jitneys," on and over the tracks of the complainant, impeding and obstructing the passage of its cars, thus stating a case within the ruling in the case of *Camden Horse Railroad Co.* v. *Citizens Coach Co., 31 N. J. Eq. 525; affirmed sub nom. Citizens Coach Co.* v. *Camden Horse Railroad Co., 33 N. J. Eq. 267.*

On the hearing the complainant made no point of the use made by the defendant of its tracks, basing its right to relief on the sole ground that the defendant is illegally operating his jitneys in the streets of the city of Newark, in which complainant's cars are operated, to its great loss and damage; and that this illegality gives it a right to an injunction.

That the complainant is suffering a loss by this competition is quite apparent, when it appears that the jitneys in the city of Newark carry about four million passengers a month, and their owners pay to the city of Newark $160,000 annually as a five per cent. tax on gross receipts.

The proposition thus presented is divisible into two questions:

*First.* Has the defendant a lawful right to carry on the business of a common carrier of passengers for hire in any of the streets of the city of Newark? Complainant contends for the negative, on the ground that the defendant has not the consent required under the so-called Kates act. *P. L. 1916 p. 283.* A consent has been granted by the city of Newark, but complainant contends that this consent is illegal, null and void because it was not granted in the manner provided as well by the Kates act as by the Limited Franchise act. *P. L. 1906 p. 50; Public Service Railway Co.* v. *General Omnibus Co., 93 N. J. Law 344.*

The defendant, on the contrary, asserts that his consent obtained from the city is valid, even though it was not granted in the manner directed by the Limited Franchise act; and also asserts that even if the consent was not lawfully granted, the complainant has no standing to maintain its present bill.

In the view I take of this case, it is unnecessary to determine the validity of the consent, because the case may be decided on the second division of the proposition, namely:

*Second.* If defendant is without such right, may complainant maintain its bill to restrain the defendant from operating over streets in which its tracks are laid on the ground that the competition is unlawful, and complainant is suffering an irreparable injury therefrom?

The right of defendant to operate his jitneys in the streets of the city of Newark in the manner declared permissible in *Camden Horse Railroad Co.* v. *Citizens Coach Co., supra,* could not be questioned, were it not for the Kates act, *supra.* Turning to the Kates act to ascertain for whose benefit the law was passed, it appears that the first section defines an auto bus to be an automobile or motor bus, commonly called a jitney, engaged in the business of carrying passengers for hire, &c. Section 2 provides (1) that no motor bus shall be operated in any street of any city (*a*) without the consent of the city; (*b*) that no such consent shall become effective, and no such operation shall be permitted until the owner of the auto bus shall file with the chief fiscal officer of the city a policy of insurance in $5,000; (*c*) that with the filing of said policy the owner shall file with the same officer a power of attorney appointing the officer his attorney for the purpose of acknowledging service of process; (*d*) that the consent may be revoked after a hearing, if it appears that the owner has failed to keep in force the insurance and power of attorney, or to comply with the terms and conditions imposed in the grant of consent, or with any law of the State of New Jersey. Section 3 provides (*a*) that on or before the tenth of each month the owner shall file, under oath, a statement of his gross receipts, and, at the same time, pay to the city five per cent. of such gross receipts "as a monthly or franchise tax for revenue for the use of the city." Provision is also made for the sum to be paid where the auto bus operates partly within and partly outside of the city, based on mileage; (*b*) that the sum so paid shall be in lieu of all other franchise taxes and municipal license fees. Under section 5 it is made a misdemeanor to operate an auto bus without complying with the act.

It is quite clear that this act was passed for the protection of the public, and for revenue. *West* v. *Asbury Park, 89 N. J.*

*Law 402.* And it nowhere appears that it was enacted in any manner for the benefit of street railway companies. This leads to the question whether, if the consent be invalid, may the complainant, for its own advantage, assert this invalidity?

In 1863 the case of *Delaware and Raritan Canal and Camden and Amboy Railroad and Transportation Co.* v. *Camden and Atlantic Railroad and Raritan and Delaware Bay Railroad Co.* was decided (*16 N. J. Eq. 321; affirmed on appeal, 18 N. J. Eq. 546*). In that case the complainants were possessed of a grant from the state which gave to them the exclusive franchise of carrying passengers and merchandise across the state between the cities of New York and Philadelphia, free from competition, unless with their consent. One of the defendants, the Camden and Atlantic Railroad Company, had a charter to construct a road from the city of Camden, through Camden and Atlantic counties, a distance of about sixty miles, to the ocean at Absecon inlet, in the county of Atlantic. The defendant the Raritan and Delaware Bay Railroad Company was authorized to construct a railroad from some suitable point on Raritan bay east of the village of Keyport, through the counties of Monmouth, Ocean, Burlington and Cape May, to Cape island on the Atlantic ocean. These railroads crossed at a point where, if consolidated, it would be quite impossible, by reason of the distance to be traversed, to compete with the complainant. Accordingly, without a grant from the state, the line of one of the railroads was deflected from the right of way, making a connection at a point nearer to Camden, thus so shortening the distance from Camden to New York that it might profitably enter into such competition. Chancellor Green enjoined the defendants, placing his grounds principally upon the exclusive franchise above referred to. The case was removed to the court of errors and appeals, where, in the opinion, Chief-Justice Beasley said that the result would be the same even if the grant was not exclusive as against the state; that no one can erect a railroad without the state's grant, and if anyone does so, it is a nuisance and an infringement of the legal rights of those having the exclusive franchise as against everyone but the state.

In the case of *Jersey City Gaslight Co.* v. *Dwight, 29 N. J. Eq. 242 (248)*, the bill was filed to restrain the defendants (who were really the Consumers Gas Company, a corporation organized under the Gas act) from competing with the complainant, complaining that the Consumers Gas Company were not, and never was, a corporation because the statutory conditions had not been complied with. In that case Vice-Chancellor Van Fleet said: "The business of manufacturing and selling illuminating gas is not a prerogative of government; like the manufacture and sale of any other ordinary article of traffic, it is open to all, and may be carried on by any person without legislative authority. Any one of the defendants, in point of right and privilege, is the equal of the complainants in this respect. They are invested with no exclusive privilege or monopoly to make and sell gas. But the defendants also claim the right to use the public streets of Jersey City for the purpose of placing pipes therein through which they may furnish gas to their customers. This is a right which sovereign power alone can confer. The rule must be considered settled that no person can acquire a right to make a special or exceptional use of a public highway, not common to all the citizens of the state, except by the grant from the sovereign power." And, finding that the defendants had attempted to acquire corporate life and power by a feigned compliance with the law, ordered an injunction against their placing gas pipes, &c., in the public streets of Jersey City.

While the same learned vice-chancellor, in the case of *Elizabethtown Gas Co.* v. *Green, 46 N. J. Eq. 118*, concluded that this latter case was disapproved in *National Docks Railroad Co.* v. *Central Railroad of New Jersey, 32 N. J. Eq. 755*, the disapproval was not as to the above excerpts.

In *Elizabethtown Gas Co.* v. *Green, supra*, the complainant, by a special statute, was created a body corporate for the purpose of selling gas to the city of Elizabeth, with power of opening the streets and laying its pipes therein. It established its works and was supplying gas to the city of Elizabeth, when, in 1870, the legislature created the Metropolitan Gas Light Company of Elizabeth. The Elizabethtown company there asserted that the

Metropolitan company had no right, in any capacity, to the franchises they were exercising, and that their claim to them was false, fraudulent and without warrant of law; and that the legislative grant was only to take effect after the stockholders had paid $30,000, and, as the truth was that that sum had never been paid, the grant never acquired vitality, and that, as a consequence, the Metropolitan company stood precisely in the same condition as it would if it had no grant.  On this latter contention Vice-Chancellor Van Fleet said (at *p. 129*) : "It is not necessary, in my judgment, to decide whether this argument construes the grant made to the Metropolitan company correctly or not, for, if it be conceded that it does, still it is certain beyond all dispute that until it is made clearly to appear that the condition in question was imposed in favor of the complainant, or for its benefit, so that it has a clear right to demand its observance, the complainant's position with respect to the condition is that simply of a stranger, and hence, it stands without the least pretence of right to complain of its breach.  It is only the parties to a grant made subject to conditions, or those in whose behalf or for whose benefit the conditions are imposed, that have a right to ask that they shall be performed, or seek protection against their breach, or redress for their violation.  The complainant is not mentioned in the charter of the Metropolitan company.  The charter contains no word or sentence which, by the most lax construction, would support even a conjecture that the condition under consideration was imposed for the benefit or protection of the complainant."  He then points out that the purpose of the grant to the Metropolitan company was the benefit to be conferred upon the people of Elizabeth, and that the condition imposed was to protect the creditors of the company.  This case was affirmed in the court of errors and appeals by a divided court, on the opinion of Vice-Chancellor Van Fleet (*49 N. J. Eq. 329*).

These latter cases seem to be dispositive of the question.  The right of the people to use the public highways of the state freely and without hindrance, subject only to proper police regulations, unless the legislature should otherwise ordain, is unques-

92 N. J. Eq.          Public Service Railway Co. v. Reinhardt.

tioned; and in the exercise of this right the people are not exercising a franchise. Thus, persons complying with the Kates act do not acquire a franchise to use the public highways. The act is prohibitive, in that it takes away rights formerly possessed; and permissive and regulative in that it authorizes the use upon complying with the terms of the act. The plain purpose of the act was primarily not to license, but to regulate and control the operations of these vehicles in the crowded streets of cities for the public benefit and safety, and for revenue. *West* v. *Asbury Park, supra.* It was not passed for the benefit of street railroads. *Elizabethtown Gaslight Co.* v. *Green, supra; Jersey City Gaslight Co.* v. *Dwight, supra.* The franchise of the complainant is as to its tracks and ways, and gives it the exclusive use thereof as against competing carriers, in the manner indicated in *Camden Horse Railroad Co.* v. *Citizens Coach Co., supra.* It has no grant outside of the tracks and ways; and, therefore, when it seeks to enjoin competing carriers from using a highway in a manner declared lawful under *Camden Horse Railroad Co.* v. *Citizens Coach Co., supra,* I feel bound, following *Elizabethtown Gaslight Co.* v. *Green, supra,* and *Jersey City Gaslight Co.* v. *Dwight, supra,* to hold that it has no standing in this court to ask for injunctive relief.

This conclusion is reached regardless of whether the defendant is operating his auto buses without having the consent required under the Kates act, and is guilty of a misdemeanor.

A decree will be advised dismissing the bill.

Counsel, without further notice, may present their decree for signing next Monday, February 14th, at the chancery chambers at Jersey City, at ten o'clock A. M.