The bill is for an injunction to restrain the defendant from supplying water to certain dwellings owned by him in the borough of Hampton. The facts are not in material dispute. The complainant was incorporated in May, 1898, under P.L. 1876ch. 318, and since July 12th, 1898, has been operating a system of water works under a franchise granted by the borough. The defendant is the owner of nine houses in the borough, one of which he occupies himself and the other eight of which he rents to tenants. In June, 1930, the defendant, becoming dissatisfied with the service of the complainant, began the laying of mains and conduits to connect his houses with an artesian well on one of his properties. The work was completed July 29th, 1930, and since August 1st, 1930, he has been supplying water to his nine houses from this well and through pipes and conduits, most of which are laid upon his own lands, but some of which are laid and maintained in the public streets by permission of the borough. He makes no separate charge to his tenants for water service and there has been no increase in rent since that service was installed, but I think the cost of such service is necessarily reflected in the rent charged. Defendant's houses are still connected with the complainant's mains, but the water has been turned off. The defendant does not now, and does not intend to, supply water service to any properties other than his own, nor to any persons except his tenants, all of whom are apparently satisfied with the service which he gives.
Complainant contends that the defendant has no legal right to maintain pipes and conduits on his own property or in the public streets of the borough for the purpose of supplying water to the houses owned by him; also that the defendant *Page 525 
is a public utility and operating a public utility plant without the approval or consent of the board of public utility commissioners.
That the defendant is within his rights in the laying of mains and conduits on his own lands and supplying through them his houses with water from an artesian well also owned by him and located on his own lands, I consider too plain for argument. With respect to his right to lay and maintain pipes and conduits in the public streets of the borough, the control of such streets being vested in the municipality by law (P.L. 1897 p. 296 §28, as amended by P.L. 1914 p. 348; 1 Cum. Supp. Comp. Stat.p. 172; see, also, "An act concerning municipalities," P.L.1917 ch. 152 p. 319; 1 Cum. Supp. Comp. Stat. p. 2228 § 2201c;Union Towel Supply Co. v. Mayor, c., of Jersey City,99 N.J. Law 52), it is elementary that such rights should be tested at law. Tucker v. Board of Chosen Freeholders of BurlingtonCounty, 1 N.J. Eq. 282; E.M. Harrison Market v. Town ofMontclair, 105 N.J. Eq. 222, and cases cited therein (at p.224).
Nor do I think the defendant can be said to be a public utility, or operating as such, within the meaning of that term as used in the act creating the public utility commission. Cum.Supp. Comp. Stat. 1925-1930 p. 1487 § 15. The supplying of water exclusively to houses and property owned by the defendant, notwithstanding that such water is consumed by tenants who are part of the public is not, in my judgment, supplying water "for public use" as contemplated by that act. The board of public utility commissioners has already gone further and said that one supplying water to his own dwelling and to the dwellings of a few neighbors is not thereby constituted a public utility, even though he charges for such service. In the matter of Alfred W.Hill Water Service, 8 N.J.P.U. Rep. 450 (at p. 454). While, of course, that statement is not binding on this court, it is interesting to note the trend of modern thought among utility specialists.
A water company, or an individual, does not become a public utility unless it owns, operates, manages or controls a (water) plant or system for public use, and does this under *Page 526 
privileges granted by the state. East Jersey Water Co. v.Board of Public Utility Commissioners, 98 N.J. Law 449;Acquackanonk Water Co. v. Board of Public UtilityCommissioners, 97 N.J. Law 366. But "the right, however, to sell water is not a prerogative of government, but is a business in which any person may engage without legislative authority."Atlantic City Water Works Co. v. Consumers' Water Co., 44 N.J. Eq. 427
(at p. 432). It is only with respect to the special use of the streets for pipes, mains, c., that a grant from the state or its subdivisions is necessary. Ibid. A true criterion by which to judge of the character of the use of any plant or system alleged to be a public utility, is whether or not the public may enjoy it of right or by permission only. Olmsted v.Proprietors of Morris Aqueduct, 47 N.J. Law 311; Mayor, c., ofPaterson v. East Jersey Water Company, 74 N.J. Eq. 49 (at p.102); and it is not suggested that the public has any right to demand water service from the defendant.
Assuming, however, that the defendant is a public utility and operating under municipal consent not approved by the board of public utility commissioners (An act concerning public utilities,P.L. 1911 ch. 195 p. 384 § 24; 2 Cum. Supp. Comp. Stat. p.2892 § 40), complaint should be addressed to that board, as it has "general supervision and regulation of, jurisdiction and control over, all public utilities (P.L. 1911 ch. 195 p. 376 §15, as amended by P.L. 1926 ch. 146 p. 226; Cum. Supp. Comp.Stat. 1925-1930 p. 1487), with complete power to enforce its orders and decrees." P.L. 1911 ch. 195 p. 387 § 33, as amended; P.L. 1924 ch. 168 p. 379; 2 Cum. Supp. Comp. Stat. p.2895 § 53; Board of Public Utility Commissioners v. Sheldon,95 N.J. Eq. 408; Board of Public Utility Commissioners v.Lehigh Valley Railroad Company, 106 N.J. Law 411 (at p. 420 —Court of Errors and Appeals, 1930).
The legislature, in setting up that board and investing it with its broad powers (West Jersey and Seashore Railroad Company v.Board of Public Utility Commissioners, 87 N.J. Law 170; AtlanticCoast Electric Railway Company v. Board of Public UtilityCommissioners, 92 N.J. Law 168 — *Page 527 
at p. 175), undoubtedly intended that questions such as that here involved should first be considered and disposed of by that board; and while the act does not and could not derogate from the constitutional authority of the courts (Erie Railroad Company
v. Board of Public Utility Commissioners, 87 N.J. Law 438;Passaic Water Company v. Board of Public Utility Commissioners,90 N.J. Law 714), resort to the courts should be had, by the board, in matters within its jurisdiction, only when necessity arises for enforcement of its orders or decrees, and, by others, only for review of such orders or decrees. But even if resort should be had to this court for relief in the first instance in this controversy, it does not appear that complainant has any standing to seek such relief. Although the complainant is operating under a franchise granted by the municipality, that franchise is not exclusive. Atlantic City Water Company v.Consumers Water Company, supra (at pp. 433 et seq.) And inHealy v. Sidone (1923), 127 Atl. Rep. 520, it was held that the operation of a bus line in violation of an ordinance requiring municipal approval will not be restrained at the suit of another transportation company operating with such approval. In that case the complainant invoked section 33 of the Public Utility act (supra) as authority for its suit, but Vice-Chancellor Leaming said that it is not "clear that that section relates to the enforcement in this court of duties of public utilities at the instance of an individual or corporation." I think it is clear that that section does not relate to such enforcement. It relates only to the enforcement of its own orders and decrees by the board itself in the appropriate court. In Elizabethtown Gas Light Co. v. Green, 46 N.J. Eq. 118,
it was held that until it is made clearly to appear that a statutory condition was imposed in favor of a suitor, or for his benefit, so that he has a clear right to demand its observance, his position with respect to such condition is merely that of a stranger without right to complain of its breach; and that it is only the parties to a grant made subject to conditions, or those in whose behalf or for whose benefit these conditions are imposed, that have a right to ask that they shall be performed, or to seek protection against their *Page 528 
breach or redress for their violation. See opinion of Mr. Justice Swayze in Public Service Railway Company v. Reinhardt, 93 N.J. Eq. 461
(at p. 486), affirming the decision of this court, reported in 92 N.J. Eq. 365. There is nothing in the Public Utility act to suggest that it was enacted for the benefit of those owning, operating or controlling public utilities. The board of public utility commissioners is the successor of the railroad commission, which had general supervision of all railroads operating in this state. By the Public Utility act the name of the old commission was changed and the jurisdiction extended to include all public utilities. In West Jersey andSeashore Railroad Company v. Board of Public UtilityCommissioners, supra, it was held that the regulation and control of utilities was vested in that board for the benefit of the state and its citizens. In that case the court had under consideration the question of the necessity of approval by the board of a lease by one railroad company to another. Chief-Justice Gummere, speaking for the court of errors and appeals, said that the requirement of approval by the board was "for the purpose of preventing a lease from being made which in its judgment embraced provisions which would be inimical to the interests of the state and its citizens, or which omitted provisions which were requisite for the protection of its interests." The same reasoning applies to the requirement of approval by this board of franchises granted by a municipality. See Fornarotto v. Board of Public Utility Commissioners,105 N.J. Law 28. That the board's disapproval of franchises in some instances inures to the benefit of a public utility already operating in a particular municipality, does not indicate that approval was required for its especial benefit. On the contrary, it is required in the public interest and to insure adequate service by one utility, where, if there were more than one authorized to give the same service in the same locality, neither could supply adequate or satisfactory service as neither could operate with profit if the business of the community were divided. Hunter v. Public Utility Commissioners, 1 N.J. Mis.R. 408; Motor Transport Co. v. Board of Public UtilityCommissioners, 104 N.J. Law 234. This power of approval *Page 529 
is intended also for the protection of the investing public, the value and stability of whose securities might be seriously affected by unnecessary competition where adequate service at reasonable rates is already being furnished by the operating utility. Such benefits as accrue to established utility corporations from the requirements of section 24 of the act are the incidental result, and not the primary purpose of the legislature.
I will advise a decree dismissing the bill.